# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 18, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000349-MR

DATE 10-9-08 ЕлА Gravitt, D.C.

PEARLY SUE MILLS GAMBREL                                                          APPELLANT

V.

ON APPEAL FROM KNOX CIRCUIT COURT
HONORABLE WILLIAM T. CAIN, JUDGE
NO. 96-CR-00101-001

COMMONWEALTH OF KENTUCKY                                                          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Pearly Sue Mills Gambrel appeals as a matter of right from a May 4, 2007 Judgment of the Knox Circuit Court re-sentencing her to a total of forty years in prison due to her prior manslaughter and arson convictions. Gambrel was convicted in 1998 for killing Larry Joe Mills, her husband, and for setting fire to their residence. After this Court affirmed Gambrel's convictions on direct appeal, she brought an RCr 11.42 motion alleging ineffective assistance of counsel. The Court of Appeals ultimately found that Gambrel's counsel provided ineffective assistance during the penalty phase of her trial by failing to present mitigating evidence, and thus remanded Gambrel's case for a new penalty phase trial. On appeal to this Court, Gambrel now contends that during her second penalty phase trial, the trial court erred by excluding certain mitigating evidence proving that she was a victim of domestic abuse. Finding that this claim of error was not properly preserved for review and that it did not result in palpable

error, we affirm.

## RELEVANT FACTS

In May of 1986, Gambrel's trailer was destroyed by fire. Gambrel's husband, Larry Joe Mills did not survive the fire, and investigators found his remains inside the trailer after the fire had been contained. Ten years later, after witnesses began coming forward alleging that Gambrel had admitted to killing her husband and setting their trailer on fire, the Barbourville Police reopened the case and eventually arrested Gambrel. On August 12, 1998, a Knox County Jury convicted Gambrel of second-degree manslaughter and first-degree arson. The trial court sentenced Gambrel in accord with the jury's recommendation, imposing consecutive sentences of ten years for the manslaughter conviction and life in prison for the arson. Although this Court affirmed Gambrel's convictions on direct appeal, we vacated her sentences and remanded the case to the circuit court with instructions that Gambrel's sentences be ordered to run concurrently.

Following her direct appeal, Gambrel moved to vacate both her sentences and convictions under RCr 11.42, alleging ineffective assistance of counsel in both the guilt and penalty phases of trial. The trial court overruled the motion without holding an evidentiary hearing. The Court of Appeals affirmed the decision as to the guilt phase, but reversed and remanded the case with instructions to hold an evidentiary hearing on whether counsel's failure to introduce mitigating evidence of alleged domestic violence during the penalty phase constituted ineffective assistance. After holding an evidentiary hearing on February 25, 2004, the trial court denied Gambrel's RCr 11.42 motion, finding that in light of the overwhelming and highly incriminating evidence against Gambrel, her penalty would not have been any less stringent if mitigating evidence had

2

been presented. On appeal, the Court of Appeals reversed the trial court's determination, concluding that the failure to present evidence of domestic violence during the penalty phase was ineffective assistance of counsel. The Court of Appeals then vacated Gambrel's sentences and remanded the case for a new penalty phase trial.

The Knox Circuit Court held Gambrel's new penalty trial on April 16, 2006. At trial, several witnesses, including Gambrel's neighbors and family members as well as Gambrel herself, testified about the domestic abuse Gambrel endured from Mills. During Gambrel's testimony, she tried to answer a question on direct examination that would reveal something Mills had said to her. However, before Gambrel stated what Mills had said, the Commonwealth objected, arguing that Mills's statement was inadmissible hearsay. Although the trial court agreed with the Commonwealth and excluded this testimony, the court also noted that Gambrel could enter this statement by avowal. At the conclusion of the penalty trial, the jury recommended and the trial court re-sentenced Gambrel to ten years for the manslaughter conviction and forty years for the arson charge. This appeal followed.

## ANALYSIS

### I. Because Gambrel Did Not Enter the Excluded Evidence By Avowal, Her Claim Regarding Its Admissibility Is Not Properly Preserved For Appellate Review.

During Gambrel's second penalty phase trial, she testified about Mills's violent behavior and his physical abuse of her. Gambrel revealed that the violence typically occurred after Mills had been drinking alcohol. She stated that in the past Mills had "cut up" the contents of their home and twice had fired a gun at her. Gambrel claimed that in the months prior to Mills's death, his violence against her had escalated from simply pushing her to actually hitting her. Gambrel stated that on one occasion, Mills arrived

3

home in a rage, threw out the supper Gambrel had fixed, and pulled her down to the floor by her hair. In testifying about this incident, Gambrel started to reveal what Mills had said to her after she asked him where he had been. However, the Commonwealth objected to this testimony as inadmissible hearsay. At the bench conference that followed, Gambrel's counsel argued that Mills's statement in this instance was not hearsay because it was not being used to prove the truth of the matter asserted. Defense counsel pointed out that if Gambrel testified that Mills had threatened to kill her, Mills's statement would not be used to prove that he did try to kill her, but only that he made such a threat. The trial court disagreed, however, and held that although Gambrel could say that Mills threatened her, she could not testify as to what Mills specifically said to her. Subsequently, the trial court reminded the parties that Gambrel could enter this evidence by avowal. Despite this notice, Gambrel failed to introduce evidence of Mills's alleged hearsay statement by avowal.

Gambrel now contends that notwithstanding her failure to make this evidence part of the record on appeal, this claim of error is properly preserved for review due to the retroactive application of the recently amended KRE 103, which eliminates the requirement of entering excluded evidence into the record by avowal. Although Gambrel is correct that the amended KRE 103 now only requires lawyers to make the substance of the excluded evidence known to the court, her argument hinges on the new version of KRE 103 being applied retroactively to her case. Because we disagree that KRE 103 can be applied retroactively, we find that Gambrel's claim of error in this instance is not properly preserved for appellate review.

To support her argument, Gambrel cites to one case, Commonwealth v. Alexander, 5 S.W.3d 104, 106 (Ky. 1999), which held that a procedural change to

4

Kentucky's rule on expert opinion evidence should be applied retroactively. Gambrel argues that since the Kentucky Rules of Evidence are procedural in nature, their amendments should also have a retroactive application. However, as the Commonwealth notes, Gambrel fails to recognize the clear precedent on this issue as outlined in KRE 107(b) and explained in Blair v. Commonwealth, 144 S.W.3d 801, 809 (Ky. 2004). In Blair, supra, this Court held that in the event of a re-trial, the same rules of evidence that were applied in a defendant's original trial should also apply in his re-trial. Id. In explaining this holding, we stated that "as pointed out in the Commentary to KRE 107, 'cases tried . . . under pre-existing evidence rules must be retried . . . under the same rules if retrial . . . becomes necessary. Id. See also Terry v. Commonwealth, 153 S.W.3d 794, 801-802 (Ky. 2005). Thus, since the pre-2007 evidentiary rules governed Gambrel's 1998 trial, those same rules applied in her 2006 re-trial. Because the pre-2007 rules require excluded evidence to be made part of the record by avowal, and because Gambrel failed to enter such evidence, her claim of error is not properly preserved for review.

## II. The Trial Court's Exclusion of Mills's Alleged Hearsay Statement Did Not Rise to the Level of Palpable Error and Thus, Is Not Grounds For Reversal.

Gambrel recognizes in her reply brief that if her offer of proof of the excluded evidence is not adequate under KRE 103(a)(2), then this issue is reviewable as a palpable error under KRE 103(e). In order to prevail on a palpable error claim, Gambrel is required to show that this error resulted in manifest injustice. See RCr 10.26. This Court has explained "that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different," then the error has not resulted in manifest injustice and will not justify a reversal. Martin v. Commonwealth, 207 S.W.3d 1, 3, (Ky. 2006). In Gambrel's case, she complains that

5

the trial court's refusal to allow her to testify about a specific threat made by Mills resulted in an extreme injustice and constituted grounds for reversal. However, because several witnesses, including Gambrel herself, testified about Mills's physical abuse of Gambrel, any specific threat would have been cumulative of the evidence already presented to the jury on this subject.

During Gambrel's second penalty trial, several witnesses testified about the alleged domestic violence Gambrel endured. Linda Hall, one of Gambrel's neighbors, testified that on one occasion Mills broke a tree branch, slapped Gambrel on the back with the limb, and dragged Gambrel into their trailer by her hair. In addition, Margaret Hobbs, Gambrel's sister, testified that she observed visible bruises on Gambrel's arms and back when Gambrel was eight months pregnant. Although Hobbs stated that she never saw Mills actually abuse Gambrel, she did state that Gambrel told her that Mills had beaten her. Norma Brannon, another sister of Gambrel's, testified that she had also seen bruises all over Gambrel, but never witnessed Mills hitting her. Brannon also testified that even though Gambrel had tried to leave Mills in the past, her fear of him caused her to always return.

Gambrel herself also testified about Mills's violent behavior and his constant abuse of her. Gambrel stated that Mills frequently refused to let her leave their residence and fired a gun at her twice. Gambrel revealed that Mills would push her, hit her, and pull her to the ground by her hair. Gambrel testified that she was afraid of Mills and that she had gotten a restraining order against Mills because of his threatening behavior. In addition, even though the trial court prohibited Gambrel from revealing the specific threat Mills made to her, Gambrel was nonetheless allowed to state that Mills had indeed threatened her. Based on this testimony, there is not a

6

substantial possibility that if Gambrel had been able to testify about the specific threat made by Mills, her penalty would have been any different. There was ample testimony presented regarding Mills's domestic abuse of Gambrel, and any evidence of a specific threat would have been merely cumulative. Because this unpreserved claim of error does not rise to the level of manifest injustice required to find palpable error, we affirm the May 4, 2007 Judgment of the Knox Circuit Court re-sentencing Gambrel to a total of forty years in prison.

## CONCLUSION

Gambrel alleges that the trial court erroneously excluded certain hearsay testimony regarding a violent threat made by Mills but this issue was not properly preserved for appellate review under former KRE 103 because Gambrel did not enter this excluded testimony by avowal. She nonetheless claims that this ruling amounted to palpable error and constitutes grounds for a third penalty phase trial. However, the record reveals that several witnesses, including Gambrel, all testified about Mills's violent behavior, his domestic abuse of Gambrel, his habit of threatening Gambrel, and Gambrel's constant fear of him. There is not a substantial possibility that Gambrel's sentence would have been different if she had been able to testify about Mills's specific threat and, thus, there was no palpable error. Therefore, Gambrel's May 4, 2007 Judgment of Conviction and Sentence is affirmed.

All sitting, except Schroder, J., not sitting. All concur.


COUNSEL FOR APPELLANT:

Irvin Halbleib, Jr.
P.O. Box 16175
Louisville, KY 40256

7

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

James Coleman Shackelford
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601-8204